KOTTEN v. KNIGHT.

(Circuit Court, D. Maryland. March 29, 1905.)

PATENTS—INVENTION AND INFRINGEMENT—PNEUMATIC SURFACER.

The Kotten patent, No. 701,580, for a pneumatic surfacer for dressing the surface of stone, embodies a combination of elements some of which were old, but which resulted in producing the first entirely successful machine in the art, and discloses invention. Also *held* infringed.

In Equity. Suit for infringement of letters patent No. 701,580 for a pneumatic surfacer, granted to Herman G. Kotten June 3, 1902. On final hearing.

Arthur Steuart and E. Hayward Fairbanks, for complainant.

John Watson, Jr., Howard A. Coombs, and W. H. De C. Wright, for defendant.

MORRIS, District Judge. This is a bill of complaint in equity in usual form for an injunction and an account for infringement of patent. The complainant's patent is No. 701,580, June 3, 1902, for a pneumatic surfacer frame for holding a traveling pneumatic tool for dressing the surfaces of blocks of granite or other hard stone and producing a true plane. It was conceded at the argument that, if claims 2, 3, 11, and 13 of the patent are valid, the infringement by the defendant cannot be disputed. The following is a general description of the complainant's machine, taken from the brief of complainant's counsel:

"Complainant's machine and patent consist of a hollow post mounted upon a portable base, and having projecting from it a lateral arm capable of being turned about the post and supported at its outer and inner extremities by means of a peculiar and highly advantageous double sheave construction, whereby sagging at the outer end is prevented and the lateral arm is supported at any desired point, while at the same time the strain by means of the double sheave construction is distributed upon opposite sides of the post. The arm is formed by 'T' irons so arranged as to form a rigid support, and carries thereon a carriage of peculiar shape. This carriage is triangular in form, and is mounted upon two upper rollers pivoted in apexes. * * * The cars upon the side of the triangular carriage carry rods which support a suitable pneumatic tool of the type shown in the patent. The construction of the laterally extending arm of the complainant's machine is of such a nature that great rigidity is obtained, and through the medium of the connection 29 [a cord or wire extending from the top of the post to the end of the lateral arm, and which passes over 5 rollers] the arm can be raised or lowered with the greatest facility."

Claims 2, 3, 11, and 13 are as follows:

"(2) The combination of a post, an arm secured to a sleeve rotatably mounted thereon, a carriage movably supported on said arm, a drum carried by said arm, rollers carried by said post, a roller secured to bearings on said sleeve, said bearings projecting therefrom in an opposite direction to said arm, a connection passing around each said rollers and leading from an end of said arm to said drum, and means of rotating the latter.

"(3) In a surfacer-frame, a post, a sleeve surrounding said post and adapted to be moved thereupon, an arm projecting from said sleeve and secured thereto, tracks formed on the upper and lower surfaces of said arm, a carriage movable upon said tracks, said carriage having strips on either side thereof, rods supported by said strips, plates carried by said rods, a pneumatic tool supported upon said plates and means for raising and lowering said arm."

"(11) The combination of a post, a laterally-extending arm rotatably mounted thereupon and having an upper and lower track thereon, a carriage movable upon said tracks, strips on either side of said carriage, rods supported by said strips, plates carried by said rods, a pneumatic tool supported between said plates, a drum carried by said arm, rollers carried by said post, a connection passing around said rollers, and leading from said arm to said drum and means for rotating the latter."

"(13) The combination of a post, a sleeve rotatably mounted thereon, an arm projecting laterally from said sleeve and having tracks thereon, a roller mounted on said sleeve and extending in a direction opposite to said arm, a drum carried by said arm, a cap rotatably mounted on the upper portion of said post, two series of rollers carried by said cap and a connection extending from said drum around one pair of the rollers carried by said cap, thence downwardly around the roller carried by said sleeve, thence upwardly over the other set of rollers carried by said cap, the outer extremity of said connection being secured to an end of said arm."

The defense relied upon is a want of patentable novelty in view of the state of the art as disclosed by the prior patents cited. Of these, those most relied upon, among many other patents, are the patents of Hall, Moore, Oldham, and Marsh, Williams and McCoy. The Hall patent, No. 259,134, June 6, 1882, is for a machine for dressing or polishing stone, constructed as is the complainant's by attaching a crane-like arm to an upright post with a cord arrangement by which the arm can be raised or lowered; but there all resemblance ends. The upright post is rigidly attached to an immovable upright. The arm is not rigid, but is jointed, and is made to carry two vertical shafts by which the grinding and polishing wheel can be moved over all the surface of the stone to be dressed. The grinding wheel is rotated by a system of pulleys and belts operating upon the shafts of the jointed arm. Similarly in the patent to Moore, No. 541,978, July 2, 1895, for a stone-polishing machine, there is no horizontal rigid arm, but a jointed swinging arm with nothing to support it at the end, and with pulleys and belts to furnish power. In these machines the polishing disk rests upon the surface of the stone intended to be polished, so that there is no suggestion of sustaining the tool in a true plane over the stone. It is true that in the various patents for lifting cranes and for stone polishing and cutting devices which have been put in evidence there are found in one and another devices more or less similar to those used in the complainant's machine, but there is no one combination that is its equivalent, or which has proved practically useful. The Marsh, Williams and McCoy stone-dressing machine, patent No. 549,273, November 5, 1895, which is a machine intended to accomplish the same results by somewhat similar means, proved so inefficient that the manufacturers of the defendant's machine discarded it, and replaced it with machines made in accordance with complainant's patent. The evidence is very full to the effect that the merits of the complainant's machine are widely acknowledged, and that it has succeeded where all previous machines have failed. It is testified by those who use it that it is the first practical and satisfactory surfacer placed upon the market; that it does the work of eight or nine men and saves about $20 a day over hand labor. Surely, with this great saving

as an incentive, if any of the earlier patented machines were really practical, there would be manufacturers ready to put them on the market constructed in the most perfect manner. The makers of the defendant's machine attempted this with the Marsh, Williams and McCoy machine, but did not succeed. It is fair to infer that there is something in complainant's combination which the earlier patents did not attain, and which it has required invention to accomplish.

The result which principally distinguishes the complainant's machine is that it makes the pneumatic tool produce a true horizontal surface, and it accomplishes this greatly desired result primarily by two elements in the combination which are not shown in any prior patent. The first is that the extreme end of the long radial arm is guyed and sustained by a wire cord running to the top of post and carried over a revolving cap on its top over rollers down the opposite side of the posts to the back of the sleeve surrounding the post, and thence back over the revolving cap of the post to a drum and ratchet on the arm. This arrangement obviates the difficulty of the end. of the arm carrying the tool sagging and destroying the true horizontal surface of the stone. The second important element is that the surfacing tool is held in a carriage made with strips and rods and plates as described in the specification mounted on an arm having an upper and a lower track. The wire cord arranged as described and made fast to the extreme end of the arm prevents the arm from sagging, and the method of constructing the carriage and the double track of the arm give steadiness to the tool. To have constructed a machine which so successfully meets the requirements of a practical machine when so many other patented contrivances were failures does indicate something more than mere mechanical improvement, which an inspection of the machine as compared with the earlier ones confirms.

The only details in which the defendant's machine differs at all from the complainant's are not material. The tool carriage of the complainant has rollers on the upper and on the lower tracks of the "T" beams constituting the horizontal arm, while in the defendant's carriage for the lower rollers there is substituted a sliding shoe—an immaterial substitution of a well-known equivalent. In defendant's contrivance for affixing the pneumatic tube to the carriage and holding it there is some slight immaterial difference of mechanical construction.

Many important patented automatic machines designed to cheapen production by using power instead of hand labor are the result of old elements made to co-operate in some new manner to produce highly beneficial results. In such cases the fact that the new machine at a higher price has superseded machines under earlier patents intended to accomplish the same results is in a doubtful case sufficient to turn the scale in favor of invention. Magowan v. N. Y. Belting Co., 141 U. S. 333–343, 12 Sup. Ct. 71, 35 L. Ed. 781; Walker on Patents, § 40.

I will sign a decree granting the relief prayed and making the injunction perpetual.